IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOE ARCHULETA,

    Plaintiff,

v.                                  No. 1:09-cv-224 MCA/LFG

QWEST CORPORATION,
a Colorado corporation,

    Defendant.

## MOTION TO REMAND AND FOR WITHDRAWAL OF REFERENCE, REQUEST FOR ABSTENTION AND FOR SANCTIONS

COMES NOW Plaintiff, Joe Archuleta ("Archuleta"), by and through his attorneys of record, TAL YOUNG, P.C., (Steven Tal Young, Esq.) and pursuant to 28 U.S.C. § 1334, 1447 and 1452(B), moves this Court for an Order remanding this case and for withdrawal of the reference to the United States District Court for the District of New Mexico and in support thereof, states as follows;

### Section I – Introduction

Plaintiff Joe Archuleta ("Archuleta") seeks Preliminary Injunction to restrain Defendant Qwest Corporation ("Qwest") temporarily during the pendency of this action and permanently thereafter, from engaging in construction on his property.

As evidenced by Archuleta's Verified Complaint filed contemporaneous with the Application, on or about April 20, 2007, Mr. Joseph Martinez ("Martinez") who is purportedly a right of way manager with Qwest, approached Archuleta for the purpose of seeking an easement on behalf of Qwest to construct cabinets and related electrical installations and circuitry on Archuleta's property. At this time, Archuleta informed

Martinez that he wished to seek legal advice prior to signing an agreement for such easement. In response, Martinez told Archuleta they were under strict time restraints and that if he did not sign the easement, Qwest would force him to concede or, alternatively, take the property without compensation under eminent domain.

In light of the above, Archuleta verily believed he had no choice and was forced to enter into the easement agreement (the "Agreement") with Qwest wherein Archuleta agreed to provide a certain easement for Qwest to construct, install and maintain cabinets, electrical components and circuitry, to facilitate the construction of said equipment and to allow ingress and egress on Archuleta's property for a period of 20 years. Specifically, the Agreement is a non-exclusive easement to construct, maintain, and remove telecommunications, electrical facilities, and other appurtenances as Qwest may require and provides a twenty-five foot by twenty-five foot wide easement for said purpose. In addition, the agreement provides Qwest the right ingress and egress from the "east gate abutting said easement only, during all periods of construction, maintenance, installation, reinforcement, repair and removal over and across grantor's lands with the right to clear and keep cleared all trees and other obstructions as may be necessary for grantee's use and enjoyment of the easement area."

Qwest paid Archuleta seventy-five hundred dollars ($7,500.00) and represented that this was fair and adequate consideration for a twenty year easement. In addition, Qwest secured from Archuleta an option to renew at their discretion for an additional twenty year period, for a total of 40 years. Qwest represented to Archuleta that this was fair and reasonable compensation for the value of said easement, and assured him that this amount was an appropriate fair market value for the taking.

2

At all times material hereto, Archuleta was intimidated and was strong-armed by Qwest and the threats of Martinez.  He did not agree that the $7,500.00 compensation was fair but conceded out of fear that if he did not sign the Agreement and receive some compensation he would receive nothing.

Archuleta received payment of seventy-five hundred dollars ($7,500.00) from Qwest with the expectation that Qwest would begin the process of construction in accordance with the agreement.  The agreement did not specify a date on which construction would commence, the date on which construction would be completed, contained no specific details with respect to the construction and contained no plans or specifications other than general information pertaining to the overall scope of the project.  In conjunction with the agreement, Qwest provided a general explanation of how it intended to use Archuleta's property.  It states as follows;

"This easement is limited to three cabinets and sized approximately at: 1. A CEC Vault Hut Cabinet being 11' ft. long X 7 ft. wide and 6' ft. high 2. A Cross Connect Box being 30" Wide X 45" Long and 55" High 3. A Power Meter Pedestal being 1' ft. wide X 2' ft. long and 36" high." and provided that the "easement area shall be fenced and be erected of the same material as used on the fence of the property situate across county road 84 and to the north of the easement area."

At the time of the agreement, Archuleta's discussions with Martinez were for an easement in accordance with the above description for the purpose of housing the cabinets to be located on the northeast corner of Archuleta's property.

At the time of the agreement, Qwest represented that it would construct the cabinets within the easement that would be located on the northeast corner of the property and that the easement would not exceed the description above.

In anticipation of Qwest's assurances regarding the location of the easement and specifications of the cabinets, and believing that he had no choice based on the threats of Martinez, Archuleta entered into the agreement on April 20, 2007.

Qwest began construction of the cabinets in October of 2008 without Archuleta's knowledge in a different location than Archuleta was lead to believe. Qwest has commenced construction of the cabinets on the northwest corner of the property at the intersection of County Road 84 and 84C as opposed to the northeast corner of the property. Moreover, the construction is not in accordance with the agreement and Qwest is exceeding the agreement in many respects such that the original intentions of Archuleta (albeit secured by threats and intimidation) are totally and completely compromised. Specifically, the cabinets are not built to the specifications prescribed by the agreement and are not the size per the agreement. Qwest has performed excavation for the purpose of accommodating the cabinets and various portions of the construction exceed the proposed size of the easement and are improperly placed. Additionally, Qwest has built a man hole which intrudes into the remainder of Archuleta's property and which was not discussed or provided for in the Agreement. It is apparent that the improper placement of the cabinets affects Qwest's ability to park within the easement area which has resulted in significant damage to the subject property and the area contiguous to the location of the cabinets.

Upon information and belief, the amount presented at payment is substantially less than the fair market value of the easement that was improperly placed without the authority or consent of Archuleta.

Qwest has engaged in activities that are not in the best interest of Archuleta by constructing cabinets in a location other than what was represented and by misrepresenting the specifics of the cabinets that they intended to construct.

Qwest has commenced construction and is in the process of building the cabinets at a location other than the location represented to Archuleta and other than where Archuleta understood the cabinets would be placed.

## II.  Prefatory Matter

Archuleta seeks a Preliminary Injunction for the purpose of enjoining Qwest temporarily during the pendency of this suit, and permanently thereafter, from engaging in activities on Archuleta's property decidedly not in Archuleta's best interest.  Based on the allegations of the Verified Complaint, this Court granted a Temporary Restraining Order enjoining the activities of Qwest determining said activities presented the potential for irreparable harm to Archuleta, his property and contiguous property.  Archuleta requests a Preliminary Injunction temporarily during the pendency of this action to maintain the status quo during the pendency of this suit and permanently thereafter to restrain Qwest from further construction of electrical cabinetry and circuitry on his property.  Such is the case based on the likelihood that Archuleta has and will continue to sustain damages that will result in irreparable harm in the event that immediate equitable relief is not granted by this Court.  Moreover, at the very least, the balancing of the equities weigh heavily in favor of Archuleta in that the probability of irreparable harm to

Archuleta if the activities are allowed to continue far outweighs any potential detriment to Qwest due to the placement of the cabinetry and various electrical circuitry appears to be situated for mere ease of ingress and egress as opposed to any necessity that it be placed at this location as opposed to some other location in close proximity.

### **JURISDICTION ALLEGATIONS AND REMAND STATEMENT**

By way of the Notice, Defendant alleges that jurisdiction and venue lies with this Court pursuant to 28 U.S.C. §1441(b).  Archuleta denies any and all such allegations of Defendant that jurisdiction and venue is proper in the United States District Court for the District of New Mexico.  Archuleta affirmatively states that the object of the action is land or an interest in land that must be commenced in the county where the land is situated.  N.M.S.A. 1978, § 38-3-1 (1988).  Archuleta does not consent to entry of final orders or judgment by the United States District Court for the District of New Mexico or by a United States Magistrate designated for this case.

### **PROCEDURAL CONTEXT AND BASIS FOR REMAND AND ABSTENTION**

Contrary to Defendant's assertion, this Court does not maintain jurisdiction.  Clearly, the action pertains to an interest in real estate and involves issues purely of state law.  Plaintiff resides in Santa Fe County, Defendant's statutory agent resides in Santa Fe County, the contract at issue was made and to be performed in Santa Fe County and, lastly, the property is entirely situate in Santa Fe County.  Moreover, the witnesses that may or will testify with respect to the acts that serve as the basis for Plaintiff's Complaint are located in Santa Fe County.  Clearly, venue is properly maintained by the First Judicial District Court, County of Santa Fe, State of New Mexico.  See N.M.S.A. 1978, § 38-3-1(f).

New Mexico's general venue statute is codified at N.M.S.A. 1978 § 38-3-1. The statute provides, in pertinent part, as follows;

"When lands or any interest in lands are the object of any suit in whole or in part, the suit shall be brought in the county where the land or any portion of the land is situate."

New Mexico precedent is clear that the action which is the subject of this dispute has venue in Santa Fe County. See, *Cooper v. Amerada Hess Corp.,* 129 N.M. 710 (2000), *Cooper v. Chevron,* 132 N.M. 382 (2002).

The action involves issues wholly encompassing state law and the action presents no federal questions as it is not a claim arising under the constitution, laws or treaties of the United States within the meaning of 28 U.S.C. § 1331 and, as such, the action is subject to remand by this Court.

Defendant would have this Court believe that diversity exists simply because Defendant Qwest is a Colorado corporation. Yet, Qwest was served through its registered agent for service process, CT Corporation located in Santa Fe County. Therefore, for all intents and purposes, Defendant maintains citizenship in New Mexico by and through its registered agent for service of process. Diversity confers jurisdiction on the federal court when each defendant is a citizen of a different state from each plaintiff. *Dolch v. United California Bank,* 702 F.2d. 178 (1983). In the absence of complete diversity, the Court lacks subject matter jurisdiction to hear the action. *First American Nat. Bank v. Straight Creek Processing Co.,* 756 F.Supp. 945 (E.D. VA. 1991).

Clearly, Defendant removed this action in light of the scheduled hearing on Plaintiff's Preliminary Injunction set for March 10, 2009 at 8:30am before the Honorable

Daniel Sanchez. Such is the case despite Plaintiff's notification to Defense counsel that the matter is not subject to removal based on the above-mentioned venue. As such, alternatively the Court should abstain from entertaining this matter and remand this case under the general discretionary powers granted by 11 U.S.C. § 105(a). "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title..." In the interest of justice and comity, and out of deference for Judge Sanchez, issues which wholly encompass state law, this Court must abstain from entertaining jurisdiction over this action.

As a matter of comity, and out of respect the state court's ability to effectively adjudicate matters within the scope of its jurisdiction, this Court must abstain from entertaining these proceedings, remand this action to the First Judicial Court for the County of Santa Fe, State of New Mexico, so as to allow the state court to proceed with the hearing on the preliminary injunction and complete other proceedings as required.

In light of the nature of the removal sought and the clear lack of jurisdiction with this Court, the Court should remand these proceedings without a hearing. When it is clear that the petition for removal is groundless, the Court may grant remand ex parte. *Tomasino v. California*, 451 F.2d 176 (9th Cir. 1971), *cert. denied*, 406 U.S. 974, 92 S.Ct. 2408, 32 L.Ed. 2d 674 (1972).

Further, in light of the groundless nature of Defendant's Notice of Removal and due to the fact that it was filed clearly to avoid the scheduled hearing on the preliminary injunction before Judge Sanchez, Plaintiff requests that this Court impose sanctions on Defendant and Defendant's counsel in light of the frivolous nature of this request.

WHEREFORE, Plaintiff, Joe Archuleta, moves this Court;

1. For an Order remanding this matter to the First Judicial District Court, County of Santa Fe, State of New Mexico in favor of continued prosecution of the State Court action;

2. For a decision from this Court to abstain from hearing this matter in accordance with the general discretionary powers granted by 11 U.S.C. § 105(a);

3. For sanctions to be imposed against Defendant and Defendant's counsel for the frivolous nature of the Notice of Removal;

4. For attorney's fees and costs incurred from the bringing of this Motion, and;

5. For such other and further relief as the Court deems just in the premises.

Respectfully submitted,

**TAL YOUNG, P.C.**

By:   */s/ Steven Tal Young, Esq.*
      **STEVEN TAL YOUNG**
      Attorney for Plaintiff
      20 First Plaza, N.W., Suite 500
      Albuquerque, NM 87102
      (505) 247-0007
      (505) 764-6099 Fax

I HEREBY CERTIFY that on the 9th day of March, 2009, I filed the foregoing *electronically* through the CM/ECF system which caused the following Parties or counsel to be served by electronic means (or by other means), as more fully reflected on the Notice of Electronic Filing:

>Eric R. Burris, Esq.
>eburris@bhfs.com
>Attorney for Defendant Qwest Corporation


__*/s/ Steven Tal Young, Esq.*_____
**STEVEN TAL YOUNG, ESQ.**
Attorney for Plaintiff